**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL NO. 1:12CV367-FDW-DSC**

| | |
|---|---|
| **CHRISTOPHER OWENS,** )<br>　　　　　**Plaintiff,** )<br>　　　　　　　　　　　　　　)<br>　　　vs. 　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>**CAROLYN W. COLVIN,**[1]　　)<br>**Commissioner of Social**　　)<br>**Security Administration,**　　)<br>　　　　　**Defendant.** )<br>_____) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #10) and "Brief in Support ..." (document #10-1), both filed March 27, 2013; and Defendant's "Motion for Summary Judgment" (document #11) and "Memorandum in Support ..." (document #12), both filed May 20, 2013. On June 17, 2013, this case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[2]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin will be substituted for Michael J. Astrue as the Defendant in this matter. Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is necessary.

[2] Pursuant to the Pretrial Scheduling Order entered on January 29, 2013, this matter is ripe upon the filing of Defendant's Motion and Memorandum. See Document #9. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

1

# I. PROCEDURAL HISTORY

On March 2, 2010, Plaintiff filed an application for a period of disability and Social Security disability insurance benefits ("DIB") alleging that he was unable to work from June 11, 1994 through his date last insured of December 31, 2009. [3] (Tr. 76, 111-12). Plaintiff subsequently amended his alleged onset date to July 21, 2008. (Tr. 49).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff subsequently requested a hearing which was held on July 27, 2010. (Tr. 46-75).

On July 27, 2011, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 12-27). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged onset date of July 21, 2008 and December 31, 2009, the date he last met the insured status requirements of the Social Security Act. (Tr. 17). The ALJ also found that Plaintiff suffered from status post total right and left knee replacement, osteoarthritis, and obesity, which were severe impairments within the meaning of the regulations (Tr. 17), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 20). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[4] perform a range of light work.[5] Specifically, the ALJ found that

---

[3] Because Plaintiff acquired sufficient quarters of coverage to remain insured for DIB only through December 31, 2009 (Tr. 17), he had the burden of showing that he was disabled on or before that date. See 20 C.F.R. §§ 404.101, 404.130 404.131.

[4] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff could:

> perform a range of light work as defined in 20 CFR 404.1567(b) (lift/carry 20 pounds occasionally, 10 pounds frequently) except he is limited to work that does not require him to stand or walk more than two hours in an eight hour day, with normal breaks; sit about six hours in an eight hour day, with normal breaks; and no pushing or pulling bilaterally with the lower extremities. He can occasionally climb a ramp or stairs; never climb a ladder, rope or scaffold; occasionally balance, stoop, kneel, crouch, and crawl; and should avoid even moderate exposure to hazards such as dangerous machinery or heights.

(Tr. 20). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. He further found that Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms was not entirely credible, and that those symptoms would not preclude light work as described in the assessed RFC (Tr. 21). Based upon that RFC, the ALJ then found that Plaintiff could not perform his past relevant work as a lineman or groundskeeper. (Tr. 25).

The ALJ then properly shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert ("V.E.") identified light jobs (office helper, bench assembler, and cashier II) that Plaintiff could perform. The V.E. also stated that 123,200 of these jobs existed in North Carolina. (Tr. 26). The ALJ found Plaintiff capable of performing work existing in significant numbers in the national economy, and concluded that he was not disabled during the relevant period. (Tr. 27).

On August 12, 2011, Plaintiff filed a Request for Review by the Appeals Council.

By notice dated September 22, 2012, the Appeals Council denied Plaintiff's request for further administrative review. (Tr. 1-5, 10-11).

Plaintiff filed the present action on November 16, 2012. He assigns error to the ALJ's

assessment of his RFC, and his decision to give "little weight" to the opinion of Plaintiff's treating orthopedist, Dr. Michael Funderburk. Plaintiff also assigns error to the ALJ's assessment of his credibility and subjective complaints of pain. See Plaintiff's "Brief in Support ..." 6-10 (document #10-1). The parties' cross motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the

responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" at any time, as defined for Social Security purposes, before the expiration of his insured status on December 31, 2009.[6] Plaintiff argues that the ALJ erred in assessing his RFC. To the contrary, the ALJ's RFC determination is adequately supported by substantial evidence including Plaintiff's medical records and treatment history, as well as the opinions of the state agency reviewing physicians.

In September 2010, Dr. N.B. Shah opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, subject to certain limitations. Plaintiff could stand and/or walk for only two hours in an eight hour day, with normal breaks; sit for only about six hours in an eight hour day, with normal breaks; could not use his lower extremities to push or

---

[6]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

    inability to engage in any substantial gainful activity by reason of any medically determinable
    physical or mental impairment which can be expected to result in death or which has lasted or can
    be expected to last for a continuous period of not less than 12 months . . . .
    Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

pull; could only occasionally climb ramps or stairs; could never climb ladders, ropes, or scaffolds; could only occasionally balance, stoop, kneel, crouch, and crawl; and should avoid even moderate exposure to hazards such as machinery or heights. (Tr. 92-93). The ALJ adopted this opinion verbatim (Tr. 20; see also Tr. 72 (indicating that hypothetical question posed to vocational expert was based on Dr. Shah's opinion)). Dr. Shah's opinion is consistent with but more restrictive than the opinion of another state agency physician, Dr. Stephen Levin, provided in June 2010. (Tr. 81-82). The ALJ is entitled to rely on the opinions of those doctors insofar as they considered all the relevant evidence. Lusk v. Astrue, No. 11-196, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing doctors may amount to substantial evidence where they represent a reasonable reading of the relevant medical evidence, citing 20 C.F.R. §§ 404.1527(c) and (e), 416.927(c) and (e)). See also Stanley v. Barnhart, 116 Fed. App'x 427, 429 (4th Cir. 2004); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

Moreover, these opinions are well supported by the record as a whole. See 20 C.F.R. § 404.1527(c)(4). As the ALJ noted, Dr. Brian Carey examined Plaintiff in July 2010 and reported that his joints and back were not tender; he had a full range of motion; he had no swelling; his gait was normal, and he had no neurological abnormalities. (Tr. 25, referring to Tr. 406-08). As the ALJ also correctly emphasized, in July 2010 Dr. Carey certified to the Department of Transportation that Plaintiff could continue – with "[n]o restrictions" – to drive commercial vehicles. (Tr. 25, referring to Tr. 70, 407).

Plaintiff argues that the ALJ failed to assign controlling weight to a checklist opinion provided by his treating orthopedist, Dr. Michael Funderburk. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993

6

F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

The ALJ adequately explained his reasons for assigning "little weight" to Dr. Funderburk's checklist opinion (Tr. 415-17, 446). The ALJ stated that he afforded "little weight" to Dr. Funderburk's conclusions because they were expressed on "check-box type forms" that were "provided by [Plaintiff's] attorney, as opposed to opinions fully articulated in [the doctor's] own words and recorded in [Plaintiff's] medical records contemporaneously with the medical evaluation and treatment of [Plaintiff]." (Tr. 24). A checklist opinion is "entitled to relatively little weight." Berrios Lopez v. Sec'y of Health & Human Servs., 952 F.2d 427, 431 (1st Cir. 1991). See also 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion"); Halloran v. Barnhart, 362 F.3d 28, 31 n.2 & 32 (2d Cir. 2004) (checklist opinions are "only marginally useful" and "not particularly informative"); Craig, 76 F.3d at 590 (physician's opinion that is not supported by objective evidence should be accorded significantly less weight); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) (checklist forms

7

"unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence") (citing Third Circuit authority).

Plaintiff emphasizes Dr. Funderburk's opinion (Tr. 417) that he should elevate his legs during the work day. The ALJ found that the opinion is "not supported by any [of Dr. Funderburk's] notes" (Tr. 24). Plaintiff does not dispute this finding.

The ALJ also gave "little weight" to Dr. Funderburk's opinion because it is "inconsistent with the overall evidence of record." (Tr. 24). Neither of the state agency physicians opined that Plaintiff needed to elevate his legs (Tr. 81-82, 92-93). Doctors Carey and McCormack both certified that Plaintiff could drive commercial vehicles (Tr. 70, 407, 409) – an activity that would not permit him to elevate his legs to hip level. The ALJ properly concluded that Dr. Funderburk's opinion concerning Plaintiff's swelling is not adequately documented. (Tr. 24). Indeed, Dr. Carey specifically reported that Plaintiff suffered from "no swelling." (Tr. 407).

The ALJ also noted that Dr. Carey reported that Plaintiff's gait was normal by November 2008 and that he had a full range of motion (Tr. 24, referring to Tr. 407; see also Tr. 25, 263, 267). Significantly, Dr. Funderburk reported in August 2008 – less than one month after the alleged onset date – that Plaintiff was "doing quite well" and that "[o]verall" he was "doing quite nicely" (Tr. 275; see also Tr. 299, 336, 338, 341, 344). Finally, Dr. Funderburk's checklist opinion concerning Plaintiff's ability to sit, climb ramps or stairs, kneel, crouch, balance, and crawl is inconsistent with the opinions of both Dr. Shah (Tr. 92-93) and Dr. Levin (Tr. 81-82), who are "highly qualified . . . experts in the evaluation of the medical issues in disability claims under the Social Security Act." 20 C.F.R. § 404.1527(e)(2)(i).

The ALJ properly concluded that Dr. Funderburk's decision to check the box indicating

that Plaintiff is not "capable of full-time work" (Tr. 415) concerns an "issue ultimately reserved to the Commissioner per Social Security [R]uling 96-5p" (Tr. 24). As stated in the ruling that the ALJ cited:

> treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

SSR 96-5p, available at 1996 WL 374183, at *3.

For those reasons, the ALJ's decision to afford "little weight" to Dr. Funderburk's opinion is supported by substantial evidence.

Plaintiff next argues that the ALJ's assessment of his credibility is not supported by substantial evidence.[7] The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. § 416.929(b) and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A)). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other

---

[7] In his brief, Plaintiff presents his credibility argument twice, albeit in slightly different forms. Plaintiff first raises the credibility issue concerning vocational limitations caused by pain, document #10-1 at 7-9. He raises the issue again in relation to the ALJ's treatment of his credibility in general. Id. at 9-10.

9

> evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's status post total right and left knee replacement, osteoarthritis, and obesity – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. This determination is supported by substantial evidence.

In evaluating Plaintiff's credibility, the ALJ explained that Plaintiff's daily activities are inconsistent with his alleged disability. (Tr. 25). The ALJ stated that Plaintiff reported that he read, watched television, walked for half a mile, drove (including for relatively long distances), did some yard work in the acre surrounding his home, and a little bit of gardening. (Tr. 25, referring to Tr. 25, 51, 54, 60, 67-68, 70, 166, 170, 171, 407, 423). The ALJ also noted that Plaintiff reported visiting his family and friends, attending church twice a week, doing light housekeeping and cooking, shopping for groceries once a week, and walking as a means of transportation. (Tr. 18, referring to Tr. 54, 62, 66-67, 170, 423). Plaintiff also reported having no difficulty with doing laundry and washing dishes. (Tr. 62, 168). The regulations allow this type of evidence to be considered in evaluating Plaintiff's credibility. <u>See</u> 20 CFR §§ 404.1529(c)(3) & 404.1529(c)(3)(i) (claimant's "daily activities" and "pattern of daily living" are "important indicator[s] of the intensity and persistence of [her] symptoms"); SSR 96-7p, available at 1996 WL 374186, at *3, *5 & *7 ("daily activities" are material to assessment of

claimant's credibility). An ALJ is entitled to discount the credibility of complaints by a claimant who is able to engage in the kinds of activities as Plaintiff did here. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding that claimant's routine activities – including attending church, visiting relatives, reading, watching television, cooking, cleaning the house, and doing laundry – were inconsistent with complaints of pain); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("the pattern of [claimant's] daily activity" – including socializing, walking to town, grocery shopping, cooking, washing dishes, and generally taking care of a house – "suggests that he was not disabled from working").

The ALJ accurately noted that Plaintiff takes over-the-counter analgesics but "no prescribed pain medications." (Tr. 25, referring to Tr. 59, 150). Plaintiff repeatedly reported that he was not taking any medication at all. (Tr. 182, 191). The ALJ emphasized Plaintiff's testimony that he was able to reduce his pain to "about a five" on a scale of one to ten by using ice, heat, a TENS unit, and over-the-counter analgesics. (Tr. 25, referring to Tr. 58-59, 61, 66). Plaintiff admitted that those measures made his pain "tolerable" (Tr. 61) and did not cause any side effects. (Tr. 66). As set forth in SSR 96-7p, an ALJ may properly treat a claimant's statements as less credible where, as here, "the level . . . of treatment is inconsistent with the level of complaints." See also Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"); Gross, 785 F.2d at 1166 ("[i]f a symptom can be reasonably controlled by . . . treatment, it is not disabling" ).

Although the medical records establish that Plaintiff experienced pain and mental and

11

emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #10) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #11) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour,

889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: July 8, 2013

David S. Cayer
United States Magistrate Judge